[No. B207674. Second Dist., Div. Eight. Dec. 23, 2009.]

MANUELA ZERMENO et al., Plaintiffs and Appellants, v.
PRECIS, INC., et al., Defendants and Respondents.

**[CERTIFIED FOR PARTIAL PUBLICATION†]**

---

†Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of Discussion parts 2 and 3.

COUNSEL

Neighborhood Legal Services of Los Angeles County, David Pallack, Joshua Stehlik, Jose O. Tello, Christina Ku; Los Angeles Center for Law and Justice and Hellen Hong for Plaintiffs and Appellants.

Western Center on Law and Poverty, Richard A. Rothschild, Jennifer A. Flory; National Health Law Program, Randolph T. Boyle; National Immigration Law Center, Linton Joaquin and Sonal Ambegaokar for Maternal and Child Health Access, California Pan-Ethnic Health Network and Koreatown Immigrant Workers Alliance as Amici Curiae on behalf of Plaintiffs and Appellants.

Mayer Brown, Philip R. Recht, Christopher P. Murphy and Francisco Ochoa for Defendants and Respondents.

OPINION

**RUBIN, Acting P. J.**—Plaintiffs Manuela and Juan Zermeno appeal from the judgment entered for defendants in their unfair competition action after the trial court found that the pretrial settlement of their damage claims meant they no longer had standing to sue under the new standing requirements of Proposition 64. We hold that the changed standing rule was not intended to

apply to cases pending when it took effect where a plaintiff had suffered actual injury as required by the new law, but settled that portion of its action before Proposition 64 took effect.

## FACTS AND PROCEDURAL HISTORY

Manuela and Juan Zermeno joined a health care discount program offered by Care Entrée in December 2001.[1] For a monthly fee of $54.95, deducted automatically from the Zermenos' bank account, Care Entrée offered access to groups of health care providers who would charge discount rates. When three dentists identified on Care Entrée's list of providers said they did not participate in the program and would not offer discounts, the Zermenos tried to cancel their membership in the program. Care Entrée did not terminate their membership for another year, however, and continued to withdraw the monthly fee from the Zermenos' account. When Care Entrée finally ended the Zermenos' contract, it refunded less than $200 of the $714.35 it had taken from them.

In August 2003, the Zermenos sued Care Entrée in the Los Angeles Superior Court, alleging that Care Entrée had violated the law governing discount buying services. (Civ. Code, § 1812.100 et seq.) They also alleged that Care Entrée's violation of that law amounted to unfair competition, in violation of Business and Professions Code section 17200. Care Entrée removed the action to federal court, where the Zermenos filed a first amended complaint that added a claim for violation of Health and Safety Code section 445, which bars the operation of for-profit health care referral services.[2] The unfair competition claim was amended to include a violation of that provision, along with the discount buying service claim.

On October 4, 2004, Care Entree and the Zermenos reached a partial settlement. The parties stipulated to remand the action to state court solely to litigate the Zermenos' injunctive relief claims under Health and Safety Code

---

[1] Care Entrée is operated by defendants Precis, Inc., and The Capella Group, Inc., which do business under that name. When we refer to Care Entrée, we include Precis and Capella.

[2] Health and Safety Code section 445 states that no person or entity "shall for profit refer or recommend a person to a physician . . . or . . . any form of medical care or treatment of any ailment or physical condition. . . . [¶] . . . [¶] Any violation of this section may be enjoined in a civil action brought in the name of the people of the State of California by the Attorney General, except that the plaintiff shall not be required to allege facts necessary to show or tending to show lack of adequate remedy at law or to show or tending to show irreparable damage or loss."

section 445 and the unfair competition laws. Care Entree would pay the Zermenos $25,000 as full compensation for damages of any kind, including their restitution claims for unfair competition and their damage claims under the discount buying service laws. The Zermenos also agreed to forego any unfair competition restitution claims on behalf of the general public. The settlement was subject to approval by the federal district court, and on October 7, 2004, that court approved the agreement and remanded the action to the Los Angeles Superior Court.

After remand, the state court denied the Zermenos' motion for summary adjudication of their Health and Safety Code section 445 claim because that statute allowed only the Attorney General to sue, and did not confer a private right of action.[3]

On November 2, 2004, the voters approved Proposition 64, which amended the unfair competition law to state that a person has standing to sue for unfair competition only if he "has suffered injury in fact and has lost money or property as a result of [such] unfair competition." (See Bus. & Prof. Code, §§ 17203, 17204, as amended by Prop. 64, §§ 2, 3.) Before then, anyone acting for the general public had standing to sue for relief from unfair competition even if he had not suffered any injury. (Bus. & Prof. Code, former §§ 17203, 17204; *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 561 [71 Cal.Rptr.2d 731, 950 P.2d 1086].)[4] The initiative's findings and declarations of purpose stated that it was designed in part to stop lawyers from filing unfair competition actions if they have " 'no client who has been injured in fact under the standing requirements of the United States Constitution.' " (Historical and Statutory Notes, 4D West's Ann. Bus. & Prof. Code (2008 ed.) foll. § 17203, p. 409.) The new law took effect the day after its passage. In July 2006, our Supreme Court decided *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223 [46 Cal.Rptr.3d 57, 138 P.3d 207] (*Mervyn's*), which held that Proposition 64's new standing requirement applied to all pending unfair competition actions, including those filed before the changed law took effect.

The Zermenos' case went to trial in June 2007 on the theory that they could seek to enjoin Care Entrée's alleged violation of Health and Safety Code section 445 under the unfair competition law. (See *Stop Youth Addiction, Inc. v. Lucky Stores, Inc., supra,* 17 Cal.4th at pp. 562–563 [plaintiffs can

---

[3] We do not discuss the other portions of the motion, or the trial court's ruling, because they are not relevant to the present appeal.

[4] All further undesignated section references are to the Business and Professions Code.

bring unfair competition action for violation of any statute, even if that statute does not confer a private right of action].) The trial court found that they lacked standing to pursue their unfair competition claim because, under *Mervyn's, supra,* 39 Cal.4th 223, the new standing requirements applied to their action, and because their 2004 settlement and release of all damage claims meant they no longer had any injury in fact.

The Zermenos contend the trial court erred when it ruled on their earlier summary adjudication motion that they lacked standing to sue under Health and Safety Code section 445, and when it found at trial that the settlement of their damage claims eliminated their standing to sue for unfair competition.[5]

## DISCUSSION

1. *The New Standing Requirement Does Not Apply to This Unique Factual Situation*

It is undisputed that up to the time of the settlement, the Zermenos had a claim for actual injury that would have conferred standing under Proposition 64. They contend those injuries continued to give them standing even after the settlement and the decision in *Mervyn's*. Care Entrée contends that *Mervyn's* "foreclosed" the standing issue against the Zermenos. We conclude that Proposition 64, as construed by *Mervyn's*, does not impose the new standing requirement on these peculiar facts.[6]

The plaintiff in *Mervyn's* was a disability rights organization that sued for unfair competition because it alleged the layout of the defendant's department stores interfered with access by persons who used wheelchairs, scooters, crutches, and other mobility assistance devices. At no time had the plaintiff

---

[5] The ruling that the Zermenos lacked standing under Health and Safety Code section 445 came as part of the order denying their summary judgment motion. Because that order is not appealable until there is a final judgment, the issue is premature. (*Federal Deposit Ins. Corp. v. Dintino* (2008) 167 Cal.App.4th 333, 342–343 [84 Cal.Rptr.3d 38].)

[6] The purpose of Proposition 64 was to weed out unmeritorious claims by uninjured plaintiffs. Therefore, it seems to us that allowing unfair competition plaintiffs with actual injuries to settle their damage claims and proceed to trial on the merits of injunctive relief would not thwart that purpose, and would streamline the trial of such actions. For purposes of our discussion, however, we assume, but do not hold, that an unfair competition plaintiff with actual injury who settles his injury claims is no longer suffering an injury in fact as required by section 17204.

itself suffered any actual injury, but because the plaintiff sued before Proposition 64 was passed, it had standing at the time it brought the action. *Mervyn's* won at trial and the plaintiff appealed. After Proposition 64 took effect, *Mervyn's* moved to dismiss the appeal because the plaintiff had suffered no injury and therefore lacked standing under the new law. The Court of Appeal denied the motion to dismiss, and the Supreme Court reversed.

The parties framed the issue as whether the new law was intended to apply retroactively or prospectively. The Supreme Court noted the general rule that statutes are presumed to operate prospectively in the absence of a clearly expressed contrary intent. (*Mervyn's, supra*, 39 Cal.4th at pp. 230–231.) The newly enacted statutory language was silent on the topic, but there was language in the preamble that could be so construed. Rather than rely on that ambiguous language, the court relied on the traditional rules of statutory construction and determined that applying the new standing requirement to pending unfair competition cases resulted in a prospective application of Proposition 64. (39 Cal.4th at pp. 230–231.)

The *Mervyn's* court reached that conclusion by focusing on the effects of new legislation, not its substantive or procedural labels. If a new law changes the legal consequences of past conduct by imposing new or different liabilities for that conduct, or if it substantially affects existing rights and obligations, then its " 'application to a trial of preenactment conduct is forbidden, absent an express legislative intent to permit such retroactive application.' " (*Mervyn's, supra*, 39 Cal.4th at pp. 230–231.) A statute that establishes rules for the conduct of pending litigation without changing the legal consequences of past conduct is not retroactive, even if it draws upon facts that existed before the new law took effect. (*Ibid.*)

Applying the new standing requirement in that case did not make the provision retroactive because it did not change the legal consequences of past conduct by imposing new or different liabilities based on that conduct. It also did not change the substantive rules governing improper business conduct and it still permitted restitution of profits obtained in violation of the unfair competition law. (*Mervyn's, supra*, 39 Cal.4th at pp. 232–233.) Instead, all Proposition 64 did was withdraw standing from uninjured persons to sue on behalf of others who were injured. Standing must exist throughout the life of an action. Because challenges to standing are jurisdictional in nature and may be raised at any time, the new requirement was not retroactive. (39 Cal.4th at p. 233.)

■ The *Mervyn's* court held that Proposition 64 does not " 'significantly impair the settled rights and expectations of the parties to continue prosecution of their actions.' " (*Mervyn's, supra*, 39 Cal.4th at p. 233.) The only rights and expectations at issue were those of noninjured plaintiffs to volunteer as private attorneys general and recover their attorney's fees for obtaining restitution for others. The presumption of prospective operation should not be applied to protect so abstract an interest. (*Ibid.*)

■ In short, the *Mervyn's* court held that applying the new standing requirement to a plaintiff who was never injured did not upset any meaningful, settled rights. Where such rights were impaired, however, application of the new standing requirement was forbidden unless the statute expressly provided for it. (*Mervyn's, supra*, 39 Cal.4th at pp. 230–231.) ■ The Zermenos did suffer actual injury, but settled that portion of their claim before Proposition 64 was passed, partly in exchange for the right to pursue their injunctive relief claim in state court. Unlike applying Proposition 64 to the *Mervyn's* plaintiff, applying Proposition 64 to the Zermenos would " 'significantly impair [their] settled rights and expectations . . . .' " (39 Cal.4th at p. 233.)[7] Nothing in the statute or in the *Mervyn's* holding allows for application of Proposition 64's new standing requirement in such a case.[8]

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

.

---

[7] It would also grant Care Entrée a windfall by effectively settling the entire action even though it too bargained for continuation of the Zermenos' injunctive relief claim. We presume a complete settlement would have come at a higher price.

[8] Although not raised as an issue by the parties, application of Proposition 64, which was enacted after the Zermenos' settlement, might also be an unconstitutional impairment of the Zermenos' contract rights under that settlement. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9; *In re Marriage of Guthrie* (1987) 191 Cal.App.3d 654, 660–663 [236 Cal.Rptr. 583] [applying newly enacted statute to permit retroactive modification of marital settlement agreement that awarded former wife custody of the community property house as a form of child support would be unconstitutional].) We merely note this potential issue however, and it does not factor into our analysis.

We also want to make clear that our holding is limited to the unique facts of this case. In reaching this result, we have found an example in *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235 [46 Cal.Rptr.3d 66, 138 P.3d 214], which was the companion case to *Mervyn's*. In that case, the court held that the uninjured plaintiffs who lost standing after Proposition 64 took effect could seek leave to amend their complaint to substitute in their stead a plaintiff who sustained actual injury. (*Branick*, at pp. 243–244.) Therefore, our Supreme Court has at least suggested its willingness to adopt a flexible approach when warranted in cases where standing was lost due to the passage of Proposition 64.

Finally, we express no opinion on the merits of the Zermenos' claim for injunctive relief.

*See footnote, *ante*, page 773.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court for further proceedings.[10] Appellants shall recover their appellate costs.[11]

Flier, J., and Mohr, J.,* concurred.

---

[10] The Zermenos point out that recent Supreme Court decisions have construed other portions of Proposition 64 to require unfair competition plaintiffs to proceed under the certification requirements for class actions. (*Amalgamated Transit Union, Local 1756, AFL-CIO v. Superior Court* (2009) 46 Cal.4th 993 [95 Cal.Rptr.3d 605, 209 P.3d 937]; *Arias v. Superior Court* (2009) 46 Cal.4th 969 [95 Cal.Rptr.3d 588, 209 P.3d 923].) The Zermenos ask us to certify this as a class action, but that is an issue for the trial court in the first instance.

[11] We allowed three groups—Maternal and Child Health Access, California Pan-Ethnic Health Network, and Koreatown Immigrant Workers Alliance—to appear as amicus curiae and file an amicus curiae brief. That brief was limited to two issues: whether plans such as those offered by Care Entrée are truly necessary because consumers can negotiate for their own discounts; and whether the Department of Managed Health Care is allowed to, or capable of, effectively regulating businesses that violate Health and Safety Code section 445. The trial court did not reach those issues, and they too are best resolved there. Accordingly, we disregard the arguments raised in the amicus curiae brief, along with the supporting exhibits. We therefore deny as moot Care Entrée's motion to strike four exhibits from the amicus curiae brief, consisting mostly of news accounts, on the grounds they are hearsay and were not part of the trial record.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.